Gregory D. Honig, State Bar No. 018804
Kevin D. Ray, State Bar No. 007485
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8328
Fax: (602) 364-0700
E-mail: EducationHealth@azag.gov
*Attorneys for Defendants Humble and Nelson, ADHS*

Logan T. Johnston, AZ Bar #009484
JOHNSTON LAW OFFICES, P.L.C.
1402 E. Mescal Street
Phoenix, Arizona 85020
Telephone: (602) 452-0615
Facsimile: (602) 716-5997
ltjohnston@johnstonlawoffices.net
*Attorneys for Defendant Betlach*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| J.K. a minor by and through R.K., et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILL HUMBLE, in his official capacity as interim Director of the Arizona Department of Health Services; DR. LAURA NELSON, in her official capacity as Director, Division of Behavioral Health Services, Arizona Department of Health Services; THOMAS J. BETLACH, in his official capacity as Director of the Arizona Health Care Cost Containment System, <br><br> Defendants. | CASE NO. CIV-91-261-TUC-AWT <br><br><br> **DEFENDANTS' MOTION *IN LIMINE* NO. 2: REGARDING EVIDENCE RELATING TO MEDICAID REQUIREMENTS, MEDICALLY NECESSARY SERVICES, OR "MEETING THE NEEDS" OF RECIPIENTS** |

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence and the Court's Order of July 9, 2013 (Dkt. 621), the Defendants move *in limine* for an order precluding the Plaintiffs and their witnesses from offering evidence, testimony, or argument that the

Defendants did not comply with Medicaid requirements or that the Defendants were not providing medically necessary services or "meeting the needs" of recipients during the term of the Settlement Agreement in this matter (the "Agreement) (Dkt. 483-1). The Plaintiffs settled such allegations in exchange for the obligations the Defendants agreed to assume in the Agreement. The Plaintiffs' allegations as to Medicaid and necessary or needed services are issues of legal debate that were not resolved either in this case or, as Plaintiffs admitted, in any other at the time of the Agreement; indeed, doubt about the Plaintiffs' legal theory regarding Medicaid requirements was one of the two reasons they settled the case.[1]

The Defendants' obligations under the Agreement and their obligations under Medicaid are two separate subjects. Clearly, the Defendants would not accept the Plaintiffs' dubious legal theory, and avoiding further dispute over that issue was the primary reason the Defendants were willing to settle. Thus, the Settlement Agreement says nothing at all about obligations under Medicaid or complying with the Plaintiffs' ideas about what constitute necessary or needed services under Medicaid. Even more clearly, such issues are not among the disputes raised by the Plaintiffs in their March 6,

---

[1] As the Plaintiffs explained to Judge Roll in 2001, they settled in part because "Plaintiffs would also have had to defend their construction – also questioned by Defendants – of the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") provisions of the Medicaid Act. [42 U.S.C. § 1396d(5)] . . . It has been Plaintiffs' contention . . . that Arizona must establish a service delivery system that ensures that Medicaid-eligible children receive *all* necessary behavioral health services, including services that address the child's developmental needs. While Plaintiffs believe these propositions are well-founded . . . , they concede that their legal argument is not a slam-dunk. Among other reasons, there are no judicial decisions directly on point. " Dkt. 393, pp. 21-23 (footnotes and citations omitted) (emphasis in original).

2

2009 letter (the "Letter") (Dkt. 473-2), and they are not issues the Special Master recommended be decided in the evidentiary hearing. Reference to such subjects is therefore irrelevant and would only mislead, waste time, and confuse the issues that are relevant in an attempt to prejudice the Defendants.

More specifically, ¶ 59 of the Agreement required the Plaintiffs to initiate the dispute resolution process under the Agreement by providing a written statement of the issue(s) in dispute. The Plaintiffs did so by means of their March 6, 2009 letter. In both the Letter and their subsequent Motion for Enforcement in this Court, the Plaintiffs attempted to assert issues beyond the scope of the Agreement. As the Special Master noted, the Plaintiffs either harkened back to issues in their Complaint or made general allegations that could not be tied to the Defendants' obligations under the Agreement. The Special Master recommended, and the Court agreed, that the issues in this case are those that the Plaintiffs explicitly set forth in their Letter, which necessarily precludes other theories. The Special Master construed the dispute resolution process set out in the Agreement and found:

> Given the detail with which the parties describe the dispute resolution process and the express requirement that a party begin the process by providing a written statement of the issue[s] in dispute, the most reasonable interpretation of the provision is that the parties intended to define and limit the issues in dispute, an outcome that is possible only if disputed issues are defined with some specificity. I therefore conclude that the issues in dispute are limited to those six issues specifically identified as serious remaining issues on page 3 of the March 2009 letter.

Dkt. 607, pp. 6-7. As she explained in her first recommendation to the Court, by limiting the disputes before the Court to those six issues, she was rejecting "those arguments by

3

plaintiffs that depend upon the general introductory language of the letter and those arguments that rely upon allegations of the Complaint rather than upon terms of the Settlement Agreement." *Id.*, p. 14.

One of these assertions thus excluded is the argument by the Plaintiffs and several of their expert witnesses that the Defendants' obligations under the Agreement include complying with Medicaid requirements and providing any and all services that are medically necessary services or, as the Plaintiffs sometimes phrase this theory, the services that are necessary to "meet the needs" of recipients. E.g. Dkt. 473-1, Rotto Decl., ¶ 3: "I was asked by Plaintiffs to review Arizona's children's mental health system and opine as to whether the State has developed a system that meets class members' mental health needs, as required by the Settlement Agreement."

The Defendants immediately pointed out the irrelevance of these arguments because the Agreement and Medicaid law are separate and distinct sets of obligations and compliance with Medicaid standards is *not* a term or requirement of the Agreement. Dkt. 483, pp. 5-7 and Dkt. 499, pp. 2-7. While Medicaid defines the services Defendants provide, it does not specify how they will be delivered. "In general, the EPSDT provisions require only that the individual services listed in §1396d(a) be provided, without specifying that they be provided in any particular form." *Katie A. v. Los Angeles County*, 481 F.3d 1150, 1157 (9th Cir. 2007). The Plaintiffs settled their allegations about whether Medicaid services were being provided in 2001 in exchange for the Defendants' agreement to improve how they were provided by developing a system that "delivers services according to the Principles." Dkt. 483-2, ¶¶14-15. The Principles are a unique,

4

additional, defined set of obligations that are not required by, or found in, Medicaid statutes or rules.  The Plaintiffs' Letter underscores this distinction by not even mentioning Medicaid, medically necessary services, or a requirement to "meet the needs" of recipients, let alone listing these among the six disputes they chose to raise.

The Special Master rejected the Plaintiffs' argument that they should be allowed a broad interpretation of their 2009 Letter and that Medicaid requirements were still an issue despite not being mentioned in the Letter.  By adopting the Special Master's report, the Court has ruled that the issues in this case are limited to those the Plaintiffs explicitly alleged in their Letter and that the three remaining issues have to do with the Defendants' training, quality management, and modification of documents.  Medicaid and the provision of medically necessary or "needed" services were not among these issues in 2009, and they are not now.

Rule of Evidence 402 makes clear that "irrelevant evidence is not admissible." "Courts in the Ninth Circuit routinely grant motions *in limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n.,* 2011 WL 6300796 at *1 (D.Nev. 2011).   In addition, the considerations of Rule 403 apply.  It provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Absent a ruling *in limine*, the Defendants believe it is likely, whether by habit or inadvertence, that the Plaintiffs and their witnesses will slide back into offering evidence,

5

testimony, or argument that the Defendants are not complying with Medicaid or are not providing medically necessary services to the system's Medicaid recipients. Such efforts can and should be excluded in advance of the hearing.

For these reasons, the Defendants ask the Court to rule *in limine* that the Plaintiffs and their witnesses may not offer evidence, testimony, or argument that the Defendants have breached the Agreement by not complying with Medicaid requirements or by not providing services that are medically necessary or that "meet the needs" of the Plaintiffs.

**RESPECTFULLY SUBMITTED** this 31st day of October 2013.

> THOMAS C. HORNE
> Attorney General
>
> By:   s/Greg Honig
> Gregory D. Honig, State Bar No. 018804
> Kevin D. Ray, State Bar No. 007485
> Assistant Attorneys General
> 1275 West Washington Street
> Phoenix, Arizona 85007-2926
> *Attorneys for Defendants Humble and Nelson, ADHS*
>
> By:    s/ Logan Johnston
> Logan T. Johnston
> **JOHNSTON LAW OFFICE, PLC**
> 1402 E. Mescal Street
> Phoenix, AZ 85020
> *Attorney for Defendant Betlach\*

**CERTIFICATE OF SERVICE**

I, Logan Johnston, an attorney, hereby certify that on October 31, 2013, I electronically transmitted the foregoing Defendants' Motion *in Limine* No. 2, using the ECF System for filing and transmittal of a Notice of Electronic filing and to ECF registrants.

Anne C. Ronan
Arizona Center for Law in the Public Interest
202 E. McDowell Road, Suite 153
Phoenix, AZ 85004

Ira A. Burnim
Emily B. Read
BAZELON CENTER FOR MENTAL HEALTH LAW
1101 Fifteenth Street N.W., Suite 212
Washington, D.C. 20005-5002

Patrick Gardner
NATIONAL CENTER FOR YOUTH LAW
405 14th Street, Suite 1500
Oakland, California 94612-2701

Edward L. Myers III
ARIZONA CENTER FOR DISABILITY LAW
5025 E. Washington Street, Suite 202
Phoenix, AZ 85034
Attorney for Plaintiffs


_____s/ Logan Johnston_____